**Mahmoud FUSTOK, Plaintiff,**

v.

**CONTICOMMODITY SERVICES, INC., Conticapital Management, Inc., Continental Grain Company, Walter M. Goldschmidt, Norton Waltuch, Tom Waldeck and Ivan Auer, Defendants.**

**No. 82 Civ. 1538(MEL).**

United States District Court, S.D. New York.

Sept. 20, 1985.

---

Curtis, Mallet-Prevost, Colt & Mosle, New York City, (Herbert Stoller, Kevin R. Kopelson, New York City, of counsel), for plaintiff.

Sidley & Austin, New York City, (Marc J. Gottridge, New York City, Lawrence H. Hunt, Jr., David T. Pritikin, Sidley & Austin, Chicago, Ill., Sheldon L. Berens, Gen. Counsel, New York City, of counsel), for Continental Grain Co.

Parker Auspitz Neesemann & Delehanty P.C., New York City, (Jack C. Auspitz, Hollis L. Hyans, New York City, of counsel), for Walter M. Goldschmidt.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, (Mark H. Alcott, Cameron Clark, Richard A. Rosen, New York City, of counsel), for ContiCapital Management, Inc.

LASKER, District Judge.

Defendants Continental Grain Company ("Conti Grain"), Walter M. Goldschmidt, and ContiCapital Management, Inc. ("Conti Management") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss as to them the fifth, twenty-first, and twenty-fourth claims alleged in plaintiff Mahmoud Fustok's Second Amended Complaint.

The fifth and twenty-first claims assert implied private rights of action for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1–24 (1976 & Supp. III 1979). The fifth claim alleges that Conti Grain, Goldschmidt, and Conti Management, along with others, reallocated to Fustok's ContiCommodity Services, Inc. trading account 200 losing silver futures contracts originally purchased for someone else. The twenty-first claim alleges that Conti Grain and Goldschmidt failed diligently to supervise defendant Norton Waltuch's handling of Fustok's account. The twenty-fourth claim asserts a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1982), alleging acts of mail and wire fraud by Conti Grain, Gold-

schmidt, and Conti Management, in addition to other defendants.

Defendants argue that all three claims are timebarred by the applicable statutes of limitations. It is agreed that Fustok did not assert any claims against Conti Grain, Goldschmidt, or Conti Management until at least four and one-half years from the date of the last transaction upon which the claims are based. Defendants contend that the two CEA claims are governed by a two-year statute of limitations and that the RICO claim is subject to a three-year statute of limitations. Defendants also maintain that because the requirements of Federal Rule of Civil Procedure 15(c)(2) have not been met, the addition of Conti Grain, Goldschmidt and Conti Management as defendants in the litigation may not relate back to the date of the original complaint so as to avoid the application of the statutes of limitations. Fustok counters that a six-year statute of limitations applies to both the CEA claims and the RICO claim, and that in any event, Rule 15(c) does permit the claims against Conti Grain and Goldschmidt to relate back to the date of the original complaint.

For the reasons set forth below, the defendants' motion to dismiss the fifth, twenty-first, and twenty-fourth claims is denied.

### Statute of Limitations for the CEA Claims

■ The fifth and twenty-first claims, which assert implied private rights of action under the CEA, are not governed by any expressly applicable statutes of limitations. In such a situation a federal court must " 'borrow' the most suitable statute

1. Commodity Futures Trading Commission Act of 1974, Pub.L. No. 93–463, § 106, 88 Stat. 1389, 1393.

2. Futures Trading Act of 1982, § 235, Pub.L. No. 97–444, 96 Stat. 2294, 2324.

3. In *DelCostello* the Court applied a six-month limitations period provided in the National Labor Relations Act to govern charges of unfair labor practices brought before the NLRB, to private actions by an employee against her employer for breach of a collective bargaining

or other rule of timeliness from some other source." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). The general rule has been that federal courts will "look to the limitation periods of their forum states governing the most nearly analogous cause of action." *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692, 693 (S.D.N.Y.1978) (implied right of action under the CEA).

Defendants argue, however, that the most suitable rule of limitations for a private action under the CEA is the two-year period already embodied in the federal regulatory scheme in Sections 14(a), 7 U.S.C. § 18(a) (1982) (administrative reparations proceedings)[1] and 22(c), 7 U.S.C. § 25(c) (1982) (private right of action),[2] of the CEA. In support of this suggestion, they cite *DelCostello, supra*, in which Justice Brennan stated:

[R]esort to state law remains the norm for borrowing of limitations periods. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

462 U.S. at 171–72, 103 S.Ct. at 2294.[3] Defendants argue that the two-year statute of limitations provided in Section 14 of the CEA, 7 U.S.C. § 18, for the initiation of administrative reparations proceedings should apply because it governs a closely related form of relief.[4] They also point out

agreement and against her union for breach of a duty of fair representation.

4. In *DelCostello* Justice Brennan agreed with an earlier concurrence by Justice Stewart in *United Parcel Service v. Mitchell*, 451 U.S. 56, 68 n. 4, 101 S.Ct. 1559, 1567 n. 4, 67 L.Ed.2d 732 (1981), that a conclusion that Congress intended courts to apply the most closely analogous state statute of limitations

makes more sense as applied to a cause of action expressly created by Congress than as applied to one found by the courts to be

that the 1982 amendment that created in Section 22 of the CEA, 7 U.S.C. § 25, an express private right of action with a two-year statute of limitations constitutes "the closest possible analogy to an implied right of action" under the statute and provides "the best indication of congressional intent" as to how to fill the statute of limitations gap. Defendants' Memorandum of Law at 6. At least one court has thus far adopted defendants' theory. *See Stephens v. Clayton Brokerage Co.*, No. 82–5786, slip op. (N.D.Ill. Apr. 19, 1984) (noting a need for uniformity).

Fustok takes the position that the norm for borrowing limitations periods remains a resort to state law, in spite of the Supreme Court's holding in *DelCostello* that drawing upon a related federal statutory scheme is also appropriate. He maintains that because his CEA claims sound in fraud and breach of contract, the New York law prescribing a six-year statute of limitations applies. *See* N.Y.CIV.PRAC.LAW §§ 213(2) (contract) and 213(8) (fraud) (McKinney Supp.1984).[5]

Although defendants' argument for the application of a two-year statute of limitations is provocative, it fails on two grounds. First, apparently no reported decision has ever, in an implied right of action context, borrowed the two-year limitation period from Section 14(a) of the CEA, which since 1974 has provided for administrative reparations proceedings. In fact, several decisions have explicitly rejected such an idea. *See Shelley v. Noffsinger*, 511 F.Supp. 687, 690–91 (N.D.Ill.1981); *Grayson v. Conti-Commodity Services, Inc.*, [1978–80 Transfer Binder] COMM.FUT.L.REP. (CCH) ¶ 20,-858 at 23,518 (D.D.C.1980); *Jones v. B.C. Christopher & Co.*, 466 F.Supp. 213, 228 (D.Kan.1979). Moreover, the courts have adhered to the practice of applying state statutes of limitations (usually those governing either fraud or securities actions) to

implied rights of action under the CEA even after the passage of the 1982 amendment creating an express right of action under the CEA with a two-year statute of limitations and after the Supreme Court rendered its decision in *DelCostello*. *See Bernicker v. Pratt*, 595 F.Supp. 1034, 1035 (E.D.Pa.1984); *Cardoza v. CFTC*, 588 F.Supp. 621, 628 (N.D.Ill.1984).

Second, it is not clear what significance is to be attributed to the 1982 amendment to the CEA creating in Section 22 an express right of action with a two-year statute of limitations. Section 22(d) states that "the enactment of [the amendment] shall not affect any right of any parties which may exist with respect to causes of action accruing prior to [January 11, 1983]." 7 U.S.C. § 25(d). Although under certain circumstances it may be permissible to consider the 1982 statute in order to divine Congress' intent as to the earlier provisions of the CEA even in the face of the non-retroactivity provision, *see de Atucha v. Commodity Exchange, Inc.*, [Current Transfer Binder] COMM.FUT.L.REP. (CCH) ¶ 22,580 at 30,504 (S.D.N.Y.1985) (citing *Sam Wong & Son, Inc. v. New York Mercantile Exchange*, 735 F.2d 653, 676 n. 30 (2d Cir.1984) ), the law in this Circuit would appear to preclude the application of a two-year limitations period to Fustok's pre-amendment implied right of action. The Court of Appeals for the Second Circuit was faced with a similar problem in *EEOC v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579, 590 (2d Cir.1976) (Oakes, J.), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). In that case, the district court had applied a statute of limitations which was enacted by Congress to govern backpay actions only after the *Steamfitters* plaintiffs had initiated their actions. In the *Steamfitters* situation as in this case, pre-enactment courts as a rule had looked to analogous state

implied in a general statutory scheme—especially when that general statutory scheme itself contains a federal statute of limitations for a *related but separate form of relief.* 462 U.S. 151, 159 n. 12, 103 S.Ct. 2281, 2287 n. 12, 76 L.Ed.2d 476 (1983) (emphasis added).

5. Both plaintiff and defendants appear to agree, without addressing the issue directly, that New York statutes of limitations should provide the time periods if state law is to be consulted.

statutes of limitations. Holding that "the subsequent enactment cannot be indicative of prior congressional intent," the Court of Appeals reversed the lower court and applied the most analogous state limitations period. 542 F.2d at 590.

■ Accordingly, the statute of limitations which should be applied to Fustok's CEA claims is the six-year period provided by New York law, N.Y.CIV.PRAC.LAW §§ 213(2) & 213(8), for actions based on breach of contract and on fraud. Plaintiff's fifth and twenty-first claims therefore are not time-barred.

### Statute of Limitations for the RICO Claim

■ The twenty-fourth claim asserts a cause of action under RICO, which does not contain its own statute of limitations. The parties do not dispute that in this situation the court must apply the most appropriate limitations period provided by state law. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

Defendants contend that the most appropriate statute of limitations is the three-year period given by N.Y.CIV.PRAC.LAW § 214(2) (McKinney Supp.1984), which applies to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." *Id.* In support of their contention, defendants cite the opinion of the Second Circuit Court of Appeals in *Durante Bros. & Sons v. Flushing National Bank,* 755 F.2d 239 (2d Cir.1985). In *Durante* the Court reversed the lower court's application of a one-year statute of limitations to a RICO claim grounded in the collection of an unlawful debt. Even though N.Y.CIV.PRAC.LAW § 215(6) specified a one-year limitations period for actions to recover overcharges of interest or to enforce a penalty for such overcharges, the Court pointed out that many more elements were needed to make out a RICO claim than to establish a simple usury allegation and concluded that "[t]here [is] no state law analog to the present civil RICO claim." 755 F.2d at 248–49. The Court

therefore proceeded to apply the three-year period provided by Section 214(2) to govern actions to enforce a liability created by statute. Defendants contend that *Durante* stands for the proposition that Section 214(2)'s three-year limitation period is uniformly applicable to all RICO claims, regardless of the predicate offense involved.

Plaintiff Fustok, on the other hand, asserts that the six-year statute of limitations governing an action based on fraud, N.Y. CIV.PRAC.LAW § 213(8), should be applied to the RICO claim in this case since the twenty-fourth claim alleges acts of mail and wire fraud. In essence, plaintiff advances the theory that the applicable limitations period varies with the offense underlying each RICO claim. Fustok reads *Durante* as holding only that Section 214(2) provides the appropriate limitations period for a RICO claim based on the collection of an unlawful debt, the predicate offense in that case.

The question of what limitations period to apply to a civil RICO action has not been answered with unanimity by the courts. Within the Second Circuit itself, district court judges writing before the Court of Appeals' decision in *Durante* have arrived at diametrically opposed conclusions on the issue. *Compare Estee Lauder, Inc. v. Harco Graphics, Inc.,* 621 F.Supp. 689 (S.D. N.Y.1984) (holding that a civil RICO action based on fraud is governed by New York's six-year fraud limitations period; explicitly rejecting a uniform statute of limitations for all RICO actions) *with Teltronics Services, Inc. v. Anaconda-Ericsson, Inc.,* 587 F.Supp. 724, 733 (E.D.N.Y.1984) (finding a uniform three-year statute of limitations given by Section 214(2) applicable to RICO claims; rejecting a theory of variable limitations periods). Courts in other circuits are also divided although the weight of authority appears to lean in favor of the particularistic approach, at least when the gravamen of the RICO complaint is fraud. *See Steven Operating, Inc. v. Home State Savings,* 105 F.R.D. 7, 12 (S.D.Ohio 1984); *Kirschner v. Cable/Tel Corp.,* 576 F.Supp.

234, 240–41 (E.D.Pa.1983); *State Farm Fire & Casualty Co. v. Estate of Caton,* 540 F.Supp. 673, 684–85 (N.D.Ind.1982); *but see Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984) (choosing limitations period for "actions based on statute" for all RICO claims); *Seawell v. Miller Brewing Co.,* 576 F.Supp. 424, 427 (M.D.N.C.1983) (same).

Were the leading Second Circuit case, *Durante,* unequivocal in its support of a uniform statute of limitations for RICO actions, this court's task would be an easy one. Judge Kearse's opinion in *Durante,* however, leaves some doubt on the subject. On the one hand, *Durante* made clear that the RICO claim in that case differed significantly from a simple action to recover damages for the collection of an unlawful debt. The Court stated:

> RICO is concerned with evils far more significant than the simple practice of usury. Based on its findings that organized crime uses money gained through illegal activities such as loansharking to infiltrate legitimate businesses, Congress enacted RICO in an effort "to seek the eradication of organized crime in the United States ... by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) (Statement of Findings and Purpose), *reprinted in* 1970 U.S.Code Cong. & Ad.News 1073.

755 F.2d at 248–49. Such language is consistent with defendants' view that all RICO actions state a claim for which there is no analogous state law action. On the other hand, *Durante* narrowly frames its conclusion in finding "no state analog to the *present* civil RICO claim." *Id.* at 249 (emphasis added). The opinion is puzzling in that it is not clear to us whether the court intended to establish a general rule for RICO limitation periods, and in any event

the opinion does not state a rule of general applicability *in haec verba.*

If *Durante* does not settle the question, there is considerable authority, as indicated above, to support the proposition that the New York statute of limitations governing the state action which most closely resembles the basis for the RICO claim should apply. On that line of reasoning, if any state statute of limitations applies to the allegations contained in the twenty-fourth claim asserted by Fustok, it is surely the six-year period provided by N.Y.Civ. Prac.Law § 213(8) to cover actions based on fraud, since the complaint here alleges fraud in vivid detail.[6]

Strong, practical considerations also support denial of this motion. This case is about to go to trial and the bulk of discovery has been completed; therefore, proof of the RICO allegations will impose no substantial further pre-trial burdens on the moving defendants. Keeping the RICO claim in the case also will not add significantly to the length of the trial since little additional proof will need to be adduced to establish the RICO claim that will not otherwise be necessary to make out the several other causes of action grounded in fraud. Dismissal of the RICO claim runs the risk of a costly retrial in the event that the Court of Appeals subsequently clarifies its position on the appropriate limitations period in agreement with plaintiff's understanding. Such a rerun would not only constitute a significant and unnecessary extra demand on judicial resources, but also on the resources of the parties themselves. Bearing in mind these legal and policy considerations, we conclude that the motion to dismiss the twenty-fourth claim as time-barred should be denied.

In view of the court's decision that a six-year limitations period governs both the CEA claims and the RICO claim, consideration of whether the addition of defendants Goldschmidt and Conti Grain and the assertion of claims against them in the Second

---

**6.** It would seem that if a single act of fraud is subject to a six-year limitations period under New York law, it would not be unreasonable to apply the same statute of limitations to the multiple acts of fraud, *inter alia,* required to make out a RICO claim.

Amended Complaint may relate back to the date of the original complaint pursuant to Federal Rule of Civil Procedure 15(c) is unnecessary to the disposition of this motion.

The motion by Conti Grain, Goldschmidt, and Conti Management to dismiss as to them the fifth, twenty-first[7] and twenty-fourth claims in the Second Amended Complaint is denied.

It is so ordered.

---

[7]. Defendants Conti Grain and Goldschmidt also moved for judgment on the pleadings dismissing the twenty-first claim pursuant to FED.R. CIV.P. 12(c). That motion has been granted contemporaneously in a separate memorandum decision.